# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MELISSA KELLER | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
|  | : | NO. 13-cv-1654 |
| GC SERVICES, L.P. *et al.* | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.                                                                                  June 26, 2013

Plaintiff, Melissa Keller, brings this action against defendants, American Education

Services[1] ("AES")—a fictitious name owned by the Pennsylvania Higher Education Assistance

Agency ("PHEAA")—and GC Services, L.P. ("GCS"), alleging violations of the Fair Debt

Collection Practices Act ("FDCPA"),[2] 15 U.S.C. §§ 1692 *et seq.*, the Pennsylvania Fair Credit

Extension Uniformity Act ("FCEUA"), 73 Pa. Cons. Stat. Ann. §§ 2270.1 *et seq.*, and

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons.

Stat. Ann. §§ 201-1 *et seq.*, in connection with the defendants' collection of Keller's defaulted

student loans.  Currently before me is PHEAA's motion to dismiss for failure to state a claim

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, I will

---

[1]American Education Services is a fictitious name owned by the Pennsylvania Higher Education Assistance Agency.  (Mot. to Dismiss 1; *see also Walker v. Am. Educ. Servs.*, No. 09-2276, 2010 WL 1687613, at *1 (E.D. Pa. Apr. 26, 2010)).  Throughout this memorandum, I will refer to this defendant as the Pennsylvania Higher Education Assistance Agency.

[2]I note that Keller's complaint asserts an FDCPA violation solely against GCS.

grant PHEAA's motion to dismiss.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Like many people who attend college, Keller received student loans to cover the cost of

her school's tuition, as well as various fees and expenses.  PHEAA[3] served as the guarantor of

Keller's various student loans, which she acquired through the Federal Family Education Loan

Program ("FFELP").  (Mot. to Dismiss, Ex. 1, at 2.)  Pursuant to her master promissory note,

Keller was to begin repaying her loans six months from the date of graduation, or six months

from the time she ceased to be enrolled "at least half time at an eligible school."  (Id., Ex. 1, at

15.)

Keller was unable to make her repayments, however, and as a result defaulted on her

student loans.  (Compl. ¶ 7.)  Upon default, she contacted PHEAA and attempted to establish a

payment plan, wherein she offered to pay fifty dollars per month toward the balance of her loans.

(Id. ¶ 9.)  PHEAA rejected the offer on the ground that the repayment amount was insufficient.

(Id. ¶ 10.)

On August 9, 2012, Keller received a letter from PHEAA stating that unless she paid the

loan balance in full—$6,803.92, excluding collection costs and other fees for which she was

responsible to pay—the Department of Education would request an offset through the Treasury

Department of any federal or state tax returns.  (Id., Ex. A.)  Keller contacted GCS, PHEAA's

collection agent, to establish a payment plan, at which point she was notified that her loan

---

[3]"PHEAA is a statutorily created agency of and for the Commonwealth of Pennsylvania, with a mandate to 'make loans available to students and parents postsecondary education,' and the power to guaranty student loans." *Donohue v. Reg'l Adjustment Bureau, Inc.*, No. 12-1460, 2013 WL 607853, at *7 (Feb. 19, 2013) (internal citations omitted).

balance was $8,108.06—substantially more than the amount indicated in the letter. (*Id*. ¶ 13.) A

GCS agent told Keller that if she entered into a loan rehabilitation program, the Treasury

Department would not garnish her tax refund. (*Id*. ¶ 15.) On November 8, 2012, Keller signed a

contract with GCS, in which she agree to pay eighty-seven dollars per month. (*Id*. ¶ 16.) Keller

made her first payment to GCS on November 14, 2012.[4] (*Id*., Ex. E.)

Keller continued to make timely monthly payments according to the loan rehabilitation

program, which required her to make nine voluntary, reasonable, and affordable payments within

a ten-month period. (*Id*., ¶¶ 17, 20.) Nevertheless, in February 2013, Keller received a letter

from the Internal Revenue Service that stated $2,500 had been "deducted from her 2012 tax

return." (*Id*. ¶ 21 (presumably meaning that it had been deducted from her "tax refund" and

applied to her loan obligation).)

On March 29, 2013, Keller filed a complaint alleging violations of the FCEUA and

UTPCPL against AES (in actuality and as explained above, against PHEAA) and GCS, and a

violation of the FDCPA solely against GCS. Subsequently, PHEAA filed a motion to dismiss.

## II.     STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation

---

[4]Keller's complaint states that the first payment was made on November 19, 2012. Her banking statement, attached as Exhibit E, shows the first payment was made on November 14, 2012. In its motion to dismiss, PHEAA veritably admits that the first payment occurred on November 14. (Br. Supp. Mot. to Dismiss 4 n.8.) Hence, that is the date I will use as her first payment.

marks and citation omitted).  The pleading standard of Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements" will not suffice.  *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).  The complaint must contain sufficient factual matter to be plausible on its

face.  *See id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient.  *Id.*  Therefore, to

survive a motion to dismiss, a plaintiff must allege facts sufficient to "nudge[] [his or her] claims

across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

When faced with a motion to dismiss, "courts generally consider only the allegations in

the complaint, exhibits attached to the complaint[,] and matters of public record."  *Pension*

*Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The

Third Circuit has held, however, that "a court may consider an undisputedly authentic document

that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on

the document."  *Id.*  If such practice were not allowed, "a plaintiff with a legally deficient claim

could survive a motion to dismiss by failing to attach a dispositive document on which it relied."

*Id.*  Accordingly, I am free to consider Keller's master promissory note, which the defendant has

attached to its motion.

## III.    DISCUSSION

Keller asserts two claims against PHEAA: a violation of the FCEUA (count II) and a

violation of the UTPCPL (count III).  Additionally, though not listed as separate counts in her

complaint, Keller cursorily levies allegations of invasion of privacy and emotional

distress—allegations repeated in her response brief.[5]

Assuming, *arguendo*, that Keller intended to bring charges of intentional infliction of

emotional distress ("IIED") and false light invasion of privacy against PHEAA, those claims are

dismissed as they are simply legal conclusions. Keller's complaint is completely devoid of facts

to support either claim; it contains only bald assertions that PHEAA has committed violations of

state law, without the slightest attempt at stating a plausible claim entitling Keller to relief, let

alone offering an explanation as to how PHEAA's actions fit the elements of the alleged

violations. "When a plaintiff does not seek leave to amend a deficient complaint after a

defendant moves to dismiss it, the court must inform the plaintiff that [s]he has leave to amend

within a set period of time, unless amendment would be inequitable or futile." *Grayson v.

Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). "Where a claim is frivolous,

amendment is necessarily futile and, thus, leave to amend is not warranted." *Thompson v. Police

Dep't of Phila.*, No 10-6083, 2011 WL 4835831, at *2 (E.D. Pa. Oct. 12, 2011) (citing *Grayson*,

293 F.3d 112-13). "A claim is frivolous when it 'lacks an arguable basis in either law or in

fact.'" *Id*. (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). Because Keller offers no

facts in her complaint—or her response to the motion to dismiss, for that matter—to support a

claim of false light invasion of privacy or IIED, these frivolous claims will be dismissed with

prejudice.

Next, Keller's claim that PHEAA violated Pennsylvania's FCEUA fails as a matter of

---

[5]In her response, the charges are further defined as "invasion of privacy and false light" and "intentional infliction of emotional distress."

law.  "[T]he FCEUA expressly excludes from the term 'debt' any 'amount owed to the United

States or the Commonwealth.'" *Linko v. Am. Educ. Servs*., No. 12-355, 2012 WL 1439052, at \*4

(E.D. Pa. Apr. 26, 2012) (quoting 73 Pa. Cons. Stat. Ann. § 2270.3).  As stated above, PHEAA is

a statutorily-created entity of the Commonwealth whose purpose is "to improve higher education

opportunities . . . by enabling [PHEAA], lenders and postsecondary institutions to make loans

available to students and parents for postsecondary education purposes."  24 Pa. Cons. Stat. Ann.

§ 5102.  PHEAA, as guarantor of Keller's student loans, was attempting to collect on the debt

owed to the Commonwealth as a result of her default.  *See* 24 Pa. Cons. Stat. Ann. § 5104.3.

"Thus, the debt subject to collection is owed to the Commonwealth and expressly excluded from

the FCEUA."  *Linko*, 2012 WL 1439052, at \*4.  Because the claim fails as a matter of law and

amendment would be futile, this claim will be dismissed with prejudice.

Finally, Keller's claim that PHEAA is in violation of the UTPCPL is equally meritless.

First, Keller argues that PHEAA is in violation of section 201-3.1 of the UTPCPL because it

"misrepresented to Plaintiff the character, extent or amount of the debt or its status in a legal

proceeding."  (Compl. ¶ 45(a).)  Not only does Keller fail to identify the legal proceeding in

which the alleged misrepresentation occurred, but, even if she had, section 201-3.1 does not

provide a plaintiff with a private right of action; it simply grants authority to the attorney general

to adopt rules and regulations necessary for the enforcement of the UTPCPL.  *See* 73 Pa. Cons.

Stat. Ann. § 201-3.1.  Accordingly, it is not possible for PHEAA to have violated that provision.

Keller's next argument—that PHEAA violated the UTPCPL because it engaged in

deceptive or fraudulent conduct which created a likelihood of confusion or misunderstanding—is

also unavailing.[6]  First, Keller has failed to allege any fraudulent or deceptive conduct on the part

of PHEAA.  PHEAA's August 9, 2012 letter clearly stated that Keller was responsible for

$6,803.92 of loan principle and interest, not including "collection costs and other fees which

[Keller was] responsible to pay."[7]  (Compl., Am. Ex. A, at 1.)  Furthermore, the letter stated that

to avoid a treasury offset, Keller must "agree to pay the loan under terms accepted by [PHEAA],"

and "make the first payment under the agreement *within 65 days* of the date of the Loan

Statement payments."[8]  (*Id*., Am. Ex. A, at 3 (emphasis added).)  The letter was dated August 9,

---

[6]In its motion to dismiss, PHEAA argues that Keller's UTPCPL claim is barred by the economic loss doctrine.  "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  The Third Circuit has applied the doctrine to bar statutory fraud claims, such as those under the UTPCPL.  *See id*. at 681.  A narrow exception exists, however, where "the fraud is 'extraneous to the contract,' not 'interwoven with the breach of contract.'" *Id*. at 676 (quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)).  Because Keller's claim rests on alleged deceptive or fraudulent communication through PHEAA's August 9 letter, and not through conduct related to the master promissory note or agreement with GCS, I find that the economic loss doctrine is not applicable to these facts.

[7]Pursuant to FFELP, "[w]hether or not provided for in the borrower's promissory note . . . the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim."  34 C.F.R. § 682.410(b)(2); *see also* 34 C.F.R. § 682.410(b)(6)(i) ("A guaranty agency must engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender.").  Keller's master promissory note, which she signed on July 22, 2005, states that "if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance . . . [and such costs] may not exceed 18.5 percent of the outstanding principal and interest on the loan at the time the holders certify the payoff amounts." (Mot. to Dismiss, Ex. 1, at 5, ¶ 35(A).)

[8]Keller argues that she was misled by both PHEAA and GCS because of conflicting instructions she received in their respective letters regarding avoidance of a treasury offset.  Specifically, she argues that while PHEAA informed her that if she enrolled in a loan rehabilitation program it would not garnish her tax refund, GCS separately stated that, irrespective of her enrollment in the loan rehabilitation program, it would apply her tax refund

2012; Keller signed the repayment agreement on November 8, 2012; and she made her first

payment on November 14, 2012—ninety-seven days after receipt of the letter.  (Compl. ¶¶ 11,

19; *id*., Ex. B, at 4.)  Therefore, PHEAA was entitled to offset Keller's federal tax return.  Keller

may claim that the letter was misleading because she had the impression that enrollment in a loan

rehabilitation program would forestall a garnishment of her tax refund, but her misreading of the

letter does not equate to deceptive or fraudulent conduct.

Additionally, "'a private plaintiff pursuing a claim under the [UTPCPL] must prove

justifiable reliance' on the unlawful conduct, not merely that the wrongful conduct caused

plaintiff's injuries." *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 465 (E.D. Pa. 2009)

(quoting *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008)).  "'[A] plaintiff bringing

an action under the UTPCPL must prove . . . reliance and causation with respect to all

subsections of the UTPCPL,' upon which plaintiff brings a claim." *Id*. at 466 (quoting *Santana*

*Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005).  Here,

completely absent from the complaint are any allegations of justifiable reliance or causation.

Consequently, this argument fails to state a claim of a UTPCPL violation for both of the above

reasons.

Keller's final argument is that FDCPA infractions are per se violations of both the

---

toward her loan obligation.  (*Compare* Compl. Ex. A, at 1, *with* Ex. C, at 2).  This argument is
primarily based on Keller and her counsel's reading of the letters, which were filed in an
incorrect order.  Keller's counsel stipulated that the letters were incorrectly filed, and that the
second page of the GCS letter (Compl. Ex. C) was in actuality the third page of PHEAA's letter
(Compl. Ex. A).  Accordingly, Keller's counsel amended the exhibits to reflect the proper
contents and order of each letter.  (Am. Exs., ECF No. 10.)  Nevertheless, Keller and her counsel
continue to argue that the letters, even when read in the proper order and context, are deceptive
and misleading.

FCEUA and UTPCPL.  The first defect in this argument is that Keller has not alleged an FDCPA

violation against PHEAA.  Such an allegation was made only against GCS.  (Compl. 5.)  The

second fault with the argument is that PHEAA, as the guarantor of the federal student loans, was

in a fiduciary relationship with the Department of Education under the Higher Education Act.

*See Donohue*, 2013 WL 607853, at *7 ("FFELP regulations describe the relationship between a

guaranty agency and the DOE as a fiduciary relationship.") (citing 34 C.F.R.

§ 682.410(a)(11)(iii)).  Under the FDCPA, the term "debt collector" does not apply to an entity

attempting to collect a debt "incidental to a bona fide fiduciary obligation." 15 U.S.C.

§ 1692a(6)(F)(i).  Hence, PHEAA is not a debt collector under the FDCPA, rendering that statute

immaterial.  *See Donohue*, 2013 WL 607853, at *6 ("I find that PHEAA is not a debt collector

under the [FDCPA] because it falls into one of the enumerated exclusions, namely, that PHEAA

was attempting to collect a debt incidental to a bona fide fiduciary obligation.").

Keller's arguments based on violations of the FDCPA and section 201-3.1 of the

UTPCPL fail as a matter of law; thus, amendment would be futile and those claims will be

dismissed with prejudice.  The argument that PHEAA violated the UTPCPL through deceptive or

fraudulent conduct could, theoretically, be cured through the submission of an amended

complaint containing more sufficient factual allegations.  Therefore, because leave to amend

should be freely granted, this claim will be dismissed without prejudice to Keller's right to file an

amended complaint, should such curative facts exist.[9]

_____

[9]In granting leave to amend, I strongly encourage Keller, and her counsel, to review Rule 11(b) of the Federal Rules of Civil Procedure before hastily submitting an amended complaint.

**IV.      CONCLUSION**

For the foregoing reasons, PHEAA's motion to dismiss will be granted.  An appropriate

order follows.